MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/18/2021

# MIRER MAZZOCCHI & JULIEN, PLLC

ATTORNEYS AT LAW
1 WHITEHALL ST., 16TH FLOOR
NEW YORK, NEW YORK 10004

JEANNE MIRER                                 TELEPHONE: (212) 231-2235                    RIA JULIEN
KRISTINA MAZZOCCHI                           FACSIMILE: (212) 409-8338

August 13, 2021

**Via ECF**
District Judge Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:    Proposed Wage Agreement
> Luis Arellano et al. v. Highline Construction Corp. et al.
> Case No.: 21-cv-2318-(VEC)

Dear Hon. Judge Caproni:

Plaintiffs Luis Arellano, Pedro Leon, Bathazar Martinez and Kevin Vega (hereinafter "Plaintiffs") by their attorneys Mirer Mazzocchi & Julien, PLLC, respectfully submit this letter motion. A copy of the Proposed Settlement Agreement and exhibits is attached as Exhibit "I."

## I.    Procedural History and Relevant Facts

Plaintiffs are construction workers who allege that they were formerly employed by Defendants. Plaintiffs commenced an action against Defendants in the United States District Court for the Southern District of New York (the "Court"), bearing Dkt. No.: 21-cv-2318 (VEC) (the "Action") by filing a Complaint on March 18, 2021 (the "Complaint"), alleging unlawful harassment, retaliation, and discrimination based on their race, national origin, and perceived immigration status. Plaintiffs also alleged violations of the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL") in connection with their alleged employment by Defendants. Defendants deny the allegations made by Plaintiffs, including that Plaintiffs were subjected to any form of discrimination and/or retaliation, and further deny all allegations that Defendants failed to pay Plaintiffs improperly, and have conveyed to Plaintiffs their denial of said allegations.  Indeed, in addition to their denial of all claims made by Plaintiffs, Defendants also allege that they never employed Plaintiffs and that Plaintiffs were employed by a sub-contractor. Plaintiffs dispute this and allege that at all times they were directly employed by Defendants who

exercised operational control over them.

Pursuant to the SDNY Pilot Program, the Action was referred to mediation with the Court appointed mediator, Terri M. Solomon, Esq. After exchanging Pilot Program-mandated discovery, the parties attended a mediation on June 23, 2021 before Mediator Solomon. During that mediation, the Parties negotiated extensively, in good faith, and at arms-length. Ultimately, the mediation resulted in a settlement acceptable to the Parties which constitutes a reasonable compromise of Plaintiffs' claims, both individually and collectively, Defendants' defenses, and the *bona fide* dispute between the Parties.

Although the Complaint was drafted and filed as a class and collective action pursuant to the Federal Rules of Civil Procedure, Rule 23, and the FLSA, 29 U.S.C. § 216, the issue of certification was never litigated or decided and this matter is being settled between the named Plaintiffs and the Defendants only.

By this letter Plaintiffs submit that the settlement reached by the parties as to the wage claims, which are the only claims subject to judicial approval under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) should be deemed fair and approved by this Court. The parties reserve all rights as to their respective positions should the Proposed Wage Settlement not be approved.

## II.    Fairness of the Proposed Wage Settlement Agreement

Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *Cheeks,* 796 F.3d at 200. Rather, the parties must satisfy the Court that their agreement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.,* 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky* v. *Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Sbc,* 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010). Here, the parties meet all five factors.

1.     *The Proposed Settlement Represents a Fair and Reasonable Compromise of Plaintiffs'*
       *Alleged Claims and Defendants' Defenses and it Further Avoids the Parties' Litigation*
       *Risks*

       The Proposed Settlement Agreement provides that Defendants agree to pay Plaintiffs the total sum of One Hundred Thousand Dollars ($100,000.00) for full resolution of the Plaintiffs' Wage Claims (the "Wage Settlement Amount").

       The parties disagree on the accurate range of Plaintiffs' possible recovery. Defendants maintain that Plaintiffs were not their employees and, even if they did employ Plaintiffs, Plaintiffs were properly paid for all hours worked.  Accordingly, Defendants think that Plaintiffs are owed nothing.

       Plaintiffs allege that they were directly employed by Defendants, and that discovery exchanged supports their position. They further allege that if they are successful on all aspects of their minimum wage and overtime claims, including those allegations based on their recollections alone, they could recover up to approximately $204,980.00 ("Plaintiffs' Estimate of Maximum Wage Exposure") including wages and liquidated damages, as well as pay stub, wage notice and retaliation penalties, totaling $80,000. Thus, of the Plaintiffs' Estimate of Maximum Wage Exposure, Plaintiffs seek $62,490.00 in actual lost wages, 62,490.00 in liquidated damages and $80,000 in penalties.

       While the Proposed Wage Settlement Amount of $100,000 represents 48.79% of Plaintiffs' Estimate of Maximum Wage Exposure, Plaintiffs seek the Court's approval of the Proposed Wage Settlement Agreement as fair for representing a substantial proportion of the maximum exposure and an award greater than of the $62,490.00 wages allegedly owed according to Plaintiffs. *See Chamoro v. 293 3rd Café Inc.*, 2016 U.S. Dist. LEXIS 136101, at *4 (S.D.N.Y., Sep. 30, 2016) (approving the settlement amount in a FLSA settlement agreement as fair because "the $52,000 settlement amount constitutes a substantial proportion [71.8%] of the total possible amount that [plaintiff] could recover if successful at trial").

       Plaintiffs also allege a claim of retaliation under the FLSA and NYLL.  Therefore, Plaintiff's Estimate of Maximum Wage Exposure also includes $40,000 allocated to damages for this claim.  With respect to their retaliation claims, Plaintiffs bear the burden of proof.  Plaintiffs think that they can meet this burden by showing, amongst other things, that they engaged in protected activity in response to which they suffered retaliation. Defendants dispute Plaintiffs' retaliation claims and maintain that Plaintiffs: 1) did not engage in protected activity; and 2) cannot otherwise satisfy their burden of proof.  Accordingly, a *bona fide* dispute exists between the parties with respect to the alleged FLSA and NYLL retaliation claims.

       Plaintiff's alleged maximum recovery for unpaid overtime wages and overtime-related liquidated damages is $124,980.  The Proposed Wage Settlement Amount of $100,000 represents 80.01% of such sum. Further, if overtime-related liquidated damages are excluded, the Proposed Wage Settlement Amount represents 160.03% of the alleged overtime wages due to Plaintiffs. Accordingly, even though Plaintiffs' overtime claims are hotly contested, this settlement provides for the recovery of a significant percentage of the overtime wages and overtime-related liquidated damages that Plaintiffs claim are owed to them.

In light of the foregoing, this settlement represents a fair and reasonable compromise of the *bona fide* dispute between the parties. As such, this factor weighs in favor of fairness.

Even if the Court looks only at the settlement amount and concludes that same is not substantial enough, this settlement is still fair and reasonable because the other *Wolinsky* factors are satisfied.

2.     *Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses*

Second, settling the parties' claims at this point will avoid continuing litigation costs for both parties. *Wolinsky*, 900 F. Supp. 2d at 335. Had this action not settled, numerous depositions would take place, including the depositions of Plaintiffs, a corporate representative of Defendants, and a number of non-party witnesses. Settlement at this point will obviate such time-consuming and expensive litigation. While both parties feel confident in the merits of their positions, and understand the risks of trial, they nonetheless have agreed to settle this matter based on reaching what they believe is a fair and reasonable compromise that will give both parties certainty and bring this matter to a close.

3.     *The Settlement Agreement Avoids the Very Real Litigation Risks Faced by the Parties*

Third, the settlement accounts for the parties' respective risks in proceeding with the litigation. *Wolinsky*, 900 F. Supp. 2d at 335. Defendants risk an adverse judgment against them if Plaintiffs prevail. Because Plaintiffs claim that they were not sufficiently compensated for a weekly overtime hours, that judgment could be a substantial one. At the same time, Plaintiffs face two particularly significant litigation risks. First, a fact-finder could determine that Defendants did not employ Plaintiffs, in which case Plaintiffs recover nothing. Second, based upon records that Defendants obtained and provided, a fact-finder could find that Plaintiffs worked fewer hours than they allege (and, therefore, Plaintiffs' recovery would be substantially diminished) or that they were properly paid. In light of these litigation risks, the decision to forgo the burden and expense of trial is reasonable.

4.     *The Settlement Agreement is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Was No Collusion*

The terms of the Settlement Agreement were reached through arms'-length negotiations between the Parties' respective counsel after engaging in significant investigation and due diligence regarding the merits of Plaintiffs' claims and their likelihood of success at trial and the potential viability of Defendants' defenses.

Litigating FLSA and NYLL cases requires a significant amount of subject-area knowledge. In fact, much of what a good wage and hour lawyer needs to know to do their job is very esoteric. Accordingly, wage settlements can become problematic and unfair when they are negotiated by counsel who are not experienced in the area and, therefore, do not really know what they are doing. That is not the case here because both Plaintiffs and Defendants were represented by lawyers with extensive knowledge of the FLSA and who possess very significant litigation experience.

Plaintiffs have been represented by the firm Mirer Mazzocchi & Julien, PLLC. Mirer Mazzocchi & Julien, PLLC is a three-person law firm practicing almost exclusively in federal employment litigation with a concentration on wage claims under FLSA and associated state laws in New York. Combined, Plaintiffs' attorneys have nearly 25 years of experience litigating FLSA matters and over 60 years of combined general experience litigating complex matters in a variety of areas. These areas include actions involving discrimination, harassment, retaliation, and pay disparity, actions involving claimed violations of the National Labor Relations Act, and actions involving the advocacy of the rights of immigrant and minority workers.

Specifically, the Plaintiffs have been represented by firm-Partners Kristina Mazzocchi and Ria Julien who, since 2014, have been ligating a variety of employment cases, a large number of which are FLSA cases (involving both single Plaintiffs, multi-Plaintiffs, and Collective Actions). They have handled many complex employment litigation matters in the SDNY. These cases include the brokered settlements of Collective Actions, including one that resulted in a seven-figure settlement. The firm's fees have been approved at rates of between $350 and $500 per hour. See *Ramirez et al., v ML Restaurant Corp*., et al 14-cv-4030 (VEC), S.D.N.Y. (approving a blended firm rate of $500, and a one-third award of attorneys' fees); See also *Guerra et al v . J.A.E.-L.A.R. Restaurant Corp et al*, 19-cv-4144 (KHP) S.D.N.Y. (approving one-third award of attorneys' fees).[1]

Defendants' counsel has represented defendants in employment matters for nearly four decades. With their extensive experience, Defendants' counsel diligently worked to ensure that the Defendants maintained a strong bargaining position for any potential settlement, as well as a reasonable chance of prevailing on the merits. Defendants' counsel, therefore, skillfully acted to ensure that Plaintiffs would not receive any compensation beyond what they were potentially entitled. The contested issues demonstrate that there was no fraud or collusion. *Meigel v. Flowers of the World, NYC, Inc.,* 2012 WL 70324 (S.D.N.Y. Jan. 9, 2012) (the Court held that the courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.).

Given these arms'-length negotiations, the fifth factor, absence of collusion and the experience of counsel, is also satisfied.

5.     *The Factors Weigh In Favor of Settlement Approval*

All the above factors weigh in favor of settlement approval. Plaintiffs seek the Court's approval of the proposed settlement as fair to them in light of the totality of the circumstances. Further, at this stage in the litigation, Plaintiffs are not aware of the presence of any similarly situated employees employed by the settling Defendants who wish to join this matter as opt-in Plaintiffs under 29 U.S.C. § 216(b). In addition, Plaintiffs are not coerced by anyone to settle this case. *See Cisneros v. Schnipper Rest. LLC,* 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the Defendant.").

---

[1] Because this is a motion for approval of a settlement, Defendants do not contest the attorneys' fees requested herein.

6.      *The Attorneys' Fees Are Reasonable and Should be Approved*

In addition to reviewing the substantive fairness of the terms of the Proposed Settlement Agreement, the Court must also make a determination as to the fairness of the attorneys' fees proposed. *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), U.S. Dist. LEXIS 160352 (S.D.N.Y. Nov. 30, 2015).  Pursuant to the Proposed Wage Settlement Agreement, Plaintiffs seek approval of attorneys' fees of $25,000.

Here, Plaintiffs have entered into a signed retainer agreement authorizing attorneys' fees to be paid on the basis of 33.33% of the gross settlement, plus costs. As the previously agreed fee of 33.33% is presumptively fair, accordingly the reduced 25% fee is so indisputably fair. See *Meza v. 317 Amsterdam Corp*., No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890 (S.D.N.Y. Dec 14, 2015) (holding "Courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.").

While courts may approve attorneys' fees on the basis of either a lodestar calculation or a percentage of the common fund, "the trend in this Circuit is toward the percentage method." *WalMart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The Second Circuit has reasoned that the lodestar method "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and these reasons also can create a disincentive to early settlement." *McDaniel v County of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010). In this Circuit, district courts typically approve attorneys' fees in the range of 30% - 33 1/3% in FLSA cases. See, *Santos v. El Tepeyac Butcher Shop Inc*., 2015 WL 9077172, at *4 (S.D.N.Y. Dec. 15, 2015); *Thornhill v. CVS Pharmacy, Inc*., 2014 WL 1100135, at *3 (S.D.N.Y March 20, 2014).

7. *The Settlement Agreement Does Not Include Any Clauses Forbidden by* Cheeks

Finally, the settlement also meets the guidelines set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). *See also Gonzales v. Lovin Oven Catering of Suffolk, Inc*., 2015 WL 6550560 (E.D.N.Y. Oct. 28, 2015). Specifically, as prohibited by *Cheeks*, the instant settlement does not contain a confidentiality provision; the release agreed to by Plaintiffs releases Defendants only from claims relating to Plaintiffs wages; and the mutual non-disparagement provision is not overbroad and allows Plaintiffs the freedom to discuss their experience litigating this action.

**III.   Conclusion**

For the reasons stated herein, the parties submit that the executed Proposed Wage Settlement Agreement is a fair and equitable resolution of a *bona fide* dispute between the Parties and that the proposed fees are appropriate in this case.

This Court's approval of the Proposed Wage Settlement Agreement is an express condition of the settlement, and the Parties have agreed to take all steps necessary to dismiss the lawsuit with prejudice after payment of the sum due pursuant to the Proposed Wage Settlement Agreement, should such agreement be approved. The Parties respectfully request that the Court approve the Proposed Wage Settlement Agreement as fair and reasonable.

Respectfully submitted,

_____/s/_____

Kristina Mazzocchi
Ria Julien
Mirer Mazzocchi & Julien, PLLC
1 Whitehall St. 16th floor
New York, NY 10004
Telephone: (212) 231-2235
Email: kmazzocchi@mmsjlaw.com
rjulien@mmsjlaw.com
Attorneys for Plaintiffs

Enclosures:
Exhibit I: Wage Settlement Agreement and Exhibits

cc:      All counsel of record via ECF

In light of the clarifications provided by the parties at docket entry 27,
the settlement agreement is approved as fair and reasonable.  The
Court will enter a separate 30-day order.

SO ORDERED.

8/18/2021

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

7

# EXHIBIT I

## WAGE-RELATED SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release dated the *12* day of August, 2021, (the "Agreement") is made between Luis Arellano ("Arellano"), Pedro Leon ("Leon"), Balthazar Martinez ("Martinez"), and Kevin Vega ("Vega") (Arellano, Leon, Martinez, and Vega are each referred to herein, both individually and collectively, as the "Plaintiffs") and Highline Construction Group, LLC ("Highline") and Mark Dobbin ("Dobbin") (Dobbin and Highline are collectively referred to herein as the "Defendants") (Plaintiffs and Defendants are singularly referred to herein as a "Party." Collectively, they are referred to herein as the "Parties") as follows:

**WHEREAS**, Plaintiffs commenced an action against Defendants in the United States District Court for the Southern District of New York (the "Court"), bearing Dkt. No.: 21-cv-2318 (VEC) (the "Action") by filing a Complaint on March 18, 2021 (the "Complaint"), alleging unlawful race, national origin, and perceived immigration status discrimination, harassment, and retaliation, as well as claimed violations of the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL"); and

**WHEREAS,** Defendants deny the allegations made by Plaintiffs, including that Plaintiffs were subjected to any form of discrimination and/or retaliation, and further deny all allegations that Defendants failed to pay Plaintiffs improperly, and have conveyed to Plaintiffs their denial of said allegations; and

**WHEREAS,** pursuant to the SDNY Pilot Program, the Action was referred to mediation with the Court appointed mediator, Terri M. Solomon, Esq.; and

**WHEREAS,** on June 23, 2021, the Parties mediated before Mediator Solomon, during which counsel for the Parties negotiated extensively in good faith and agreed to a settlement acceptable to the Parties which constitutes a reasonable compromise of Plaintiffs' claims, both individually and collectively, Defendants' defenses, and the *bona fide* dispute between the Parties; and

**WHEREAS,** Plaintiffs and Defendants, despite the existence of a genuine dispute between the Parties, have agreed, in good faith, a n d to avoid the time, expense and effort of engaging in further litigation by fully and finally resolving and settling in full all FLSA-related claims that Plaintiffs had, have, or may have against Defendants under the terms of this Agreement, including but not limited to, all FLSA-related claims and issues that were or could have been raised in any manner related to Plaintiffs' respective alleged employment with Defendants or that were or could have been raised against any individual affiliated in any manner with Defendants;

**NOW, THEREFORE**, the Parties hereby agree, for the consideration and upon the terms set forth in this Agreement, and incorporating the above "Whereas" clauses, as follows:

1.      In consideration of the payment to Plaintiffs by Defendants of the gross sum of One Hundred Thousand Dollars and Zero Cents ($100,000.00) (the "Settlement Amount"), representing payment to Plaintiffs' for alleged damages, including economic damages, liquidated

damages, attorneys' fees and costs, and other valuable consideration set forth elsewhere in this Agreement, to which Plaintiffs are not otherwise entitled, Plaintiffs hereby release and forever discharge Defendants, as well as Defendants' owners, shareholders, supervisors, officers, board members, directors, shareholders, members, managers, employees, agents, attorneys, insurers and reinsurers, heirs, executors, trustees, administrators, successors, assigns, parent companies, affiliates, predecessors, successors, subsidiaries, subcontractors, and other companies (all of whom jointly and severally with Defendants, constitute and are hereinafter collectively referred to herein as "Releasees"), both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, arising under the FLSA and/or the New York Labor Law, from the beginning of time to the date of this Agreement.  This release includes the release of all claims under the FLSA and/or the New York Labor Law for unpaid compensation, unpaid minimum wages, unpaid overtime, unpaid commissions, unpaid bonuses, unpaid tips, improper deductions, unpaid fringe benefits (including any vacation, paid time off, and sick pay), unpaid accrued benefit time, liquidated damages, statutory penalties, and attorneys' fees and ligation costs.

2.      The Parties agree to execute a "Stipulation of Partial Dismissal with Prejudice," in the form annexed hereto as **Exhibit A,** which will be filed with the Court along with the Agreement and the Joint Motion for Approval of this Agreement within seven (7) days after the following conditions are met: (a) Defendants' counsel receives a duly executed Agreement signed by the before a notary public; (b) Defendants' Counsel receives a properly completed IRS Form W-9 for Plaintiffs' counsel; and (c) Defendants' Counsel receives the "Stipulation of Partial Dismissal with Prejudice," in the form annexed hereto as **Exhibit A** signed by counsel for Plaintiffs.

3.      Within thirty (30) days after the date at which issues an Order approving this Proposed Wage Related Settlement Agreement and Release as fair and reasonable, Defendants shall pay the Settlement Amount as follows:

a.   One (1) check in the total amount of $75,000.00, made payable to "MIRER MAZZOCCHI & JULIEN, PLLC as attorneys for Plaintiffs" in consideration for the settlement of Plaintiffs' claims for economic damages under the FLSA, including liquidated damages;

b.   One (1) check in the amount of $25,000, made payable to "MIRER MAZZOCCHI & JULIEN, PLLC" representing payment for Plaintiffs' attorneys' fees and costs, for which an IRS Tax Form 1099 may be issued.

All payments set forth above shall be delivered to Kristina Mazzocchi, Esq., Mirer Mazzocchi & Julien, PLLC, 1 Whitehall Street, 16th Floor, New York, New York 10004.

4.      Upon delivery of the payment of the Settlement Amount, Defendants shall be permitted to file the Stipulation of Partial Dismissal with Prejudice.

5.      In the event that Defendants fail to timely pay the entire Settlement Amount, Plaintiffs' counsel shall provide written notice to the Defendants' counsel, Aaron N. Solomon, Esq. of Kaufman Dolowich & Voluck, LLP, via email at asolomon@kdvlaw.com, of said non-payment.  Defendants will have ten (10) days from the date of receipt of Plaintiffs' written notice to remedy the untimely payment before Plaintiffs deem the Defendants to be in default and the Agreement breached.  If Defendants duly remedy the untimely payment before the expiration of that ten (10) day period, Defendants shall not be in default and the Agreement shall not be breached.  If the default is not cured within such time, then Plaintiffs shall continue litigating the merits of the claims asserted in their Seventh, Eighth, Ninth, Tenth, Eleventh, Thirteenth, and Fourteenth Causes of Action.

6.      In exchange for the tax allocation sought by Plaintiffs, Plaintiffs agree to hold Releasees harmless and indemnify Releasees, as well as their employees, their officers, and their insurer, from any payments Defendants may be required to make to any taxing authority, as a result of any of the Plaintiffs' respective failure to pay any taxes related to any compensation provided for by this Agreement.  Plaintiffs further warrant that Defendants have not provided them with any advice or instruction whatsoever as to the taxation of any portion of the Settlement Amount.

7.      By entering into this Agreement, none of the parties hereby make any admission or concession of wrongdoing. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings associated with it, shall be offered or received in evidence as giving rise to a presumption, concession or admission of any liability, fault or other wrongdoing on the part of any of the Parties hereto. Neither the payments set forth herein nor the negotiations for this Agreement (including all statements, admissions or communications) by the Parties, their attorneys, or representatives shall be considered admissions by any of the Parties. This Agreement is not, nor shall it be deemed to be, an admission of any past or present wrongdoing on the part of Defendants. Neither Plaintiffs nor Defendants shall be deemed to be a prevailing party for any purpose.  Under no circumstances shall this Agreement be cited as evidence in any proceeding against Releasees for any purpose except in any action or proceeding against Defendants to enforce this Agreement.

8.      Plaintiffs promise and represent that they will withdraw, with prejudice, any and all outstanding lawsuits, demands, actions, complaints, and/or claims of alleged violations of the FLSA concerning any of the Releasees, filed with any federal, state and local agencies/administrative body or any judicial forum against any of the Releasees.  Plaintiffs further agree that they will not file any administrative or judicial complaints, charges, lawsuits, claims, demands or actions of any kind against any of the Releasees relating to any alleged FLSA violations that took place at any time, from the beginning of time until the date of this Agreement. In the event any such complaints, charges, lawsuits, claims, demands or actions are not withdrawn due to circumstances beyond the control of Plaintiffs, Plaintiffs promise and represent that they

will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceeding connected with or resulting from any such complaints, charges, lawsuits, claims, demands or actions, and that Plaintiffs will execute such papers or documents as the requesting party determines may be necessary to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice. For the avoidance of doubt, nothing in this agreement shall prevent Plaintiffs from testifying in response to subpoena.

9.     Plaintiffs shall not publish or communicate to any person or entity, or direct others to publish or communicate to any person or entity, any Disparaging (defined below) remarks, comments, or statements concerning Defendants, any individual known to be employed by Defendants, or any individual known to be affiliated by Defendants in any way. For purposes of this Agreement, the term "Disparaging" shall mean remarks, comments, statements, or communications (in any form, including but not limited to written, oral, or electronic) that are made with the knowledge that such remarks, comments, statements, or communications are false, or that are made with reckless disregard as to their truth or falsity. Notwithstanding the provisions of this Paragraph Plaintiffs shall be entitled to make truthful statements concerning their experiences litigating their FLSA claims in this Action.

10.     Mark Dobbin likewise agrees that he shall not publish or communicate to any person or entity, or direct others to publish or communicate to any person or entity, any Disparaging (defined above) remarks concerning Plaintiffs.

11.     Plaintiffs acknowledge that their employment with Releasees has ended and that other than the allegations in their Complaint—which have not and shall not be decided should this Wage Settlement Agreement be approved—they have been paid in full for all time worked, paid correctly in accordance with all applicable wage and hour laws, and that they are owed no other forms of remuneration whatsoever, including, but not limited to, any wages, overtime compensation, vacation, bonus, tips, commission, or accrued benefit pay.

12.     Plaintiffs acknowledge that they have received sufficient consideration as set forth in this Agreement.  Plaintiffs expressly acknowledge that the release provisions herein shall be given full force and effect in accordance with each and all of the terms and provisions expressed herein, including, but not limited to, those terms and provisions relating to unknown or unsuspected rights, claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands or causes of action herein specified.

13.     Plaintiffs acknowledge that they have not divested, hypothecated, or otherwise bargained away any interest they possess in their purported claims.  In addition, the Parties acknowledge and represent that they know of no other person or entity that holds a remunerative interest in any plausible legal claims they could assert, and the Parties acknowledge and represent that there are no other persons or entities withstanding to bring any plausible legal claims that could have been asserted by the Parties against any other Party.

14.     This Agreement shall not be interpreted in favor or against either Party on account of such Party's counsel having drafted this Agreement.

15.     The Parties agree that they shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement.

16.     Except for Paragraph 1 of this Agreement, if any provision of this Agreement is determined by a court of competent jurisdiction not to be enforceable in the manner set forth in this Agreement, the Parties agree that it is their intent that such provision should be enforceable to the maximum extent possible under applicable law and that such provision shall be reformed to make it enforceable in accordance with the intent of the parties. Except for Paragraph 1 of this Agreement, if any provisions of this Agreement are held to be invalid or unenforceable, such invalidation or unenforceability shall not affect the validity or enforceability of any other portion hereof.

17.     In the event any party violates, or purports to violate, any of the provisions of this Agreement, the failure of the other party or parties, at any time to enforce any of their rights or remedies with respect thereto, shall not constitute a waiver by that Party or those Parties of any of their rights and remedies to enforce this Agreement, either with respect to the same violation or to any future violations of any of the provisions of this Agreement.

18.     By signing this Agreement, Defendants and Plaintiffs know of no reason why their respective signatures would be ineffective in any way to bind them.

19.     This Agreement has been entered into without force or duress. The Parties' decision to enter into this Agreement is a fully informed decision and the Parties are aware of all legal and other ramifications of such decision.

20.     By signing this Agreement, Plaintiffs acknowledge, by way of the annexed certification they executed, that they understand the terms of this Agreement as this Agreement was translated, either orally or verbally, to their first language, Spanish.

21.     This Agreement represents the entire agreement between Plaintiffs and Defendants addressing the settlement of all FLSA claims against Releasees. This Agreement cannot be amended, supplemented, or modified, nor may any provision be waived, except by a written instrument executed by both parties. Each party stipulates and agrees that, in entering into this Agreement, they are not relying on any representation made by any other party unless such representation is expressly set forth herein.

22.     This Agreement shall be governed by the laws of the State of New York, without regard to the choice-of-law or conflicts-of-law principles of any jurisdiction.

23.     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement. Electronic and/or facsimile signatures shall be deemed as originals, and executed copies of this Agreement that are transmitted via e-mail will be deemed originals.

24.     For the purposes of this Agreement, the parties hereby agree that any notices, correspondence, communications and payments shall be directed as follows via both email and first class mail:

For Plaintiffs: Kristina Mazzocchi, Esq., Mirer Mazzocchi & Julien, PLLC, 1 Whitehall Street, 16th Floor, New York, New York 10004; kmazzocchi@mmsjlaw.com.

For Defendants: Aaron Solomon, Esq., Kaufman Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York, 11797; asolomon@kdvlaw.com.

**[INTENTIONALLY LEFT BLANK. SIGNATURES ON NEXT PAGE]**

**IN WITNESS WHEREOF**, the Parties hereto knowingly and voluntarily executed this Agreement as of the dates set forth below.

_____          _8 - 12 - 2021_____
LUIS ARELLANO                                                   Date

STATE OF NEW YORK                }
                                                }S.S.
COUNTY OF _New York_            }

On _August 12_ , 2021, before me personally came Luis Arellano, to me known, and known to me to be the individual described in, and who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that he executed the same.

_____          Don Wilkinson
NOTARY PUBLIC                                      Notary Public, State of New York
                                                               Registration No. 01WI6365376
                                                               Qualified in Bronx County
                                                               Commission Expires 10/2/2021

_____          _8 - 12 - 21_____
PEDRO LEÓN                                                   Date

STATE OF NEW YORK                }
                                                }S.S.
COUNTY OF _New York_            }

On _August 12_ , 2021, before me personally came Pedro Leon, to me known, and known to me to be the individual described in, and who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that he executed the same.

_____          Don Wilkinson
NOTARY PUBLIC                                      Notary Public, State of New York
                                                               Registration No. 01WI6365376
                                                               Qualified in Bronx County
                                                               Commission Expires 10/2/2021

_____

BALTHAZAR MARTINEZ

_____
8/12/2021
Date

STATE OF NEW YORK            }
                             }S.S.
COUNTY OF _New York_         }

On _August 12_____, 2021, before me personally came Balthazar Martinez, to me known, and known to me to be the individual described in, and who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that he executed the same.

_____

NOTARY PUBLIC

Don Wilkinson
Notary Public, State of New York
Registration No. 01WI6365376
Qualified in Bronx County
Commission Expires 10/2/2021

_____

KEVIN VEGA

_____
08 - 12 - 21
Date

STATE OF NEW YORK            }
                             }S.S.
COUNTY OF _New York_         }

On _August 12_____, 2021, before me personally came Kevin Vega, to me known, and known to me to be the individual described in, and who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that he executed the same.

_____

NOTARY PUBLIC

Don Wilkinson
Notary Public, State of New York
Registration No. 01WI6365376
Qualified in Bronx County
Commission Expires 10/2/2021

_____

HIGHLINE CONSTRUCTION GROUP, LLC

Name:

Title:

8/13/2021

Date

STATE OF NEW YORK       }
                                            }S.S.
COUNTY OF  Nassau      }

On August 13, 2021, 2021, before me personally came Mark Dobbin who acknowledged himself/herself to be a President of Highline Construction Group, LLC, and he/she, as such being authorized so to do, executed the foregoing Confidential Settlement Agreement and General Release for the purposes therein contained, by signing his/her name for Highline Construction Group, LLC.

_____

NOTARY PUBLIC

DIANE WIERZBOWSKI
Notary Public, State of New York
No. 01WI4776977
Qualified in Suffolk County
Certified in Nassau County
Commission Expires October 31, 20 22

_____          8/13/2021

MARK DOBBIN                                         Date

STATE OF NEW YORK       }
                                            }S.S.
COUNTY OF  Nassau      }

On August 13, , 2021, before me personally came Mark Dobbin, to me known, and known to me to be the individual described in, and who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that he executed the same.

_____

NOTARY PUBLIC

DIANE WIERZBOWSKI
Notary Public, State of New York
No. 01WI4776977
Qualified in Suffolk County
Certified in Nassau County
Commission Expires October 31, 20 22

## Certificación/SPA

Yo, Luis Arellano, por la presente reconozco que el jueves 5 d agosto de 2021, Acuerdo de Liquidación y Liberación Relacionado con el Salario fue traducida al español para mí por Danilla Cuesta. Además, reconozco comprender los términos y disposiciones en la Acuerdo de Liquidación y Liberación Relacionado con el Salario. Yo firmo este reconocimiento con pleno conocimiento y consentimiento.

_____

_8 - 12 - 2021_
FECHA

## Certification/ ENG

I, Luis Arellano, hereby acknowledge that on August 5, 2021, Wage-Related Settlement Agreement and Release was translated into Spanish for me by Danilla Cuesta. I further acknowledge that I understand the terms and provisions of the Wage-Related Settlement Agreement and Release. I sign this acknowledgment with full knowledge and consent.

_____

_8 - 12 - 2021_
DATE

## Certificación/SPA

Yo, Pedro Leon, por la presente reconozco que el jueves 5 d agosto de 2021, Acuerdo de Liquidación y Liberación Relacionado con el Salario fue traducida al español para mí por Danilla Cuesta. Además, reconozco comprender los términos y disposiciones en la Acuerdo de Liquidación y Liberación Relacionado con el Salario. Yo firmo este reconocimiento con pleno conocimiento y consentimiento.

8-12-21

FECHA

## Certification/ ENG

I, Pedro Leon, hereby acknowledge that on August 5, 2021, Wage-Related Settlement Agreement and Release was translated into Spanish for me by Danilla Cuesta I further acknowledge that I understand the terms and provisions of the Wage-Related Settlement Agreement and Release. I sign this acknowledgment with full knowledge and consent.

8-12-21

DATE

## Certificación/SPA

     Yo, Balthazar Martinez, por la presente reconozco que el jueves 5 d agosto de 2021, Acuerdo de Liquidación y Liberación Relacionado con el Salario fue traducida al español para mí por Danilla Cuesta. Además, reconozco comprender los términos y disposiciones en la Acuerdo de Liquidación y Liberación Relacionado con el Salario. Yo firmo este reconocimiento con pleno conocimiento y consentimiento.

_____           8/12/2021

                                                           FECHA

## Certification/ ENG

     I, Balthazar Martinez, hereby acknowledge that on August 5, 2021, Wage-Related Settlement Agreement and Release was translated into Spanish for me by Danilla Cuesta. I further acknowledge that I understand the terms and provisions of the Wage-Related Settlement Agreement and Release. I sign this acknowledgment with full knowledge and consent.

_____           8/12/2021

                                                           DATE

## Certificación/SPA

      Yo, Kevin Vega, por la presente reconozco que el jueves 5 d agosto de 2021, Acuerdo de Liquidación y Liberación Relacionado con el Salario fue traducida al español para mí por Danilla Cuesta . Además, reconozco comprender los términos y disposiciones en la Acuerdo de Liquidación y Liberación Relacionado con el Salario. Yo firmo este reconocimiento con pleno conocimiento y consentimiento.

_08 - 1 2 - 21_

FECHA

## Certification/ ENG

      I, Kevin Vega, hereby acknowledge that on August 5, 2021, Wage-Related Settlement Agreement and Release was translated into Spanish for me by Danilla Cuesta I further acknowledge that I understand the terms and provisions of the Wage-Related Settlement Agreement and Release.  I sign this acknowledgment with full knowledge and consent.

_08 - 1 2 - 21_

DATE

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LUIS ARELLANO, PEDRO LEON,
BALTHAZAR MARTINEZ, KEVIN VEGA, on
behalf of themselves, and those similarly situated,

                    Plaintiffs,

      -against-

HIGHLINE CONSTRUCTION GROUP, LLC.,
and Mark Dobbin, in his individual and professional
capacity,

             Defendants, jointly and severally.

-------------------------------------------------------------X

Case No.: 21-cv-02318 (VEC)

**STIPULATION OF PARTIAL**
**DISMISSAL**

      **IT IS HEREBY STIPULATED AND AGREED**, by and between the Parties in the above captioned action through their undersigned counsel that, whereas no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party has an interest in the subject matter of the action, in accordance with Rule 41(a)(2) of the Federal Rules of Civil Procedure, the Seventh, Eighth, Ninth, Tenth, Eleventh, Thirteenth and Fourteenth Causes of Action asserted in the above-captioned action and all claims alleged therein be dismissed with prejudice, with each party to bear their own fees and costs.

      Plaintiffs Luis Arellano, Pedro Leon, Balthazar Martinez, and Kevin Vega are precluded from bringing any further claims against the Defendants under the Fair Labor Standards Act or New York Labor Law, or any federal, state or local law, for unpaid wages, including minimum wages and overtime pay for the period set forth in Plaintiffs' Complaint.

**IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts with scanned PDF or facsimile signatures treated as originals.

Dated: _____, 2021          Dated: ___August 13___, 2021

MIRER MAZZOCCHI & JULIEN, PLLC          KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Plaintiffs*          *Attorneys for Defendants*

By: _____          By: _____
    Kristina Mazzocchi, Esq.              Aaron N. Solomon, Esq.
    Ria Julien, Esq.              Taylor M. Ferris, Esq.
    1 Whitehall Street, 16th Floor              135 Crossways Park Drive, Suite 201
    New York, New York 10004              Woodbury, New York 11797
    (212) 231-2235              (516) 681-1100
    kmazzocchi@mmsjlaw.com              asolomon@kdvlaw.com
    rjulien@mmsjlaw.com              tferris@kdvlaw.com


**SO ORDERED:**


_____
Hon. Valerie E. Caproni, U.S.D.J.


4837-4486-9618, v. 1